KELAANI AB DUS SAMIIA                                   **PLAINTIFF**

**VERSUS**                        **CIVIL ACTION NO.: 1:09cv197-HSO-JMR**

**SHERIFF DAVID ALLISON**                               **DEFENDANT**

---

## REPORT & RECOMMENDATIONS:

This matter is before the Court pursuant to a Motion [31-1] to Dismiss or in the Alternative for Summary Judgment and Qualified Immunity filed on behalf of the Defendant Sheriff David Allison on May 21, 2010. Defendant Allison's Motion is accompanied by a Memorandum [32-1] in Support thereof. To date, Plaintiff has not filed a response in opposition. The Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, recommends that the Defendant's Motion [31-1] to Dismiss or in the Alternative for Summary Judgment and Qualified Immunity be granted.

## FACTS:

Plaintiff was arrested on January 7, 2008, and charged with two counts of Sexual Battery. (Ex. "A" Attach. [34-1] Def.'s Mot. 19.) That same day, he was booked and detained at the Pearl River County Jail ("PRCJ") to await trial on the pending charges. *Id.* At some point, Plaintiff was convicted and sentenced on one count of Sexual Battery, and he was transferred into the custody of the Mississippi Department of Corrections on March 3, 2009. (Ex. "A" Attach. [34-1] Def.'s Mot. 14.) On March 5, 2009, Plaintiff filed this *pro se* § 1983 action against Sheriff Allison alleging that

he suffered violations of his constitutional rights while being held at the PRCJ.[1]

In his Complaint, Plaintiff alleges that Defendant Allison is liable for both failing to protect him from violence at the hands of another inmate, and for failing to provide him with adequate medical attention following the assault. Also, Plaintiff contends that he was subjected to unconstitutional conditions of confinement during his detention at the PRCJ. Specifically, Plaintiff alleges that black mold is present in the restrooms and around the beds, that water drips from the ceiling due to poor air flow, that the air conditioning vents are clogged with dust, that inmates get sick because it is too cold, and that there is no pest control for ants or spiders. Further, Plaintiff alleges that he was subjected to verbal abuse by both medical and correctional staff at the PRCJ. Plaintiff seeks compensatory damages in the amount of One Million Two Hundred Thousand U.S. dollars ($1,200,000.00). Defendant filed the present Motion to Dismiss, or in the Alternative for Summary Judgment and Qualified Immunity on May 21, 2010.

## STANDARD OF REVIEW:

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987). "The requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the

---

[1]The Court notes that Plaintiff does not specify whether his claims are against Defendant David Allison in his individual capacity, his official capacity, or both. Because *pro se* complaints must be construed liberally, the Court will interpret Plaintiff's Complaint to allege claims against Defendant Allison in both his individual and official capacity. *See Williams v. Love,* 2006 WL 1581908, *5 (S.D.Tex. 2006).

governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986). To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact. *See Howard*, 783 F.2d at 1315.

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights. Therefore, section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States. *White v. Thomas*, 660 F. 2d 680,693 (5th Cir. 1981). A plaintiff cannot succeed merely by showing any deprivation of his rights. Section 1983 was intended to protect rights protected by federal law. *Karmi-Panahi v. Los Angles Police Dept.*, 839 F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985).

Under 42 U.S.C. § 1983, liability may be imposed upon any person who, acting under the color of state law, deprives another of federally protected rights. It neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of

all who suffer injury at the hands of the state or its officers.  Municipal liability under section 1983

requires proof of three elements: a policymaker; an official policy; and a violation of constitutional

rights whose "moving force" is the policy or custom.  *Piotrowski v. City of Houston*, 237 F.3d 567,

578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978).  *Monell* and later

decisions reject municipal liability predicated on *respondeat superior*, because the text of section

1983 will not bear such reading.  *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403

(1997). "Congress did not intend municipalities to be held liable unless action pursuant to official

municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

A suit against a governmental agent or officer in his official capacity is a suit against the office

that the employee holds and not against the actual employee.  *See Kentucky v. Graham*, 473 U.S. 159,

165 (1985).  The three requirements for municipal liability outlined in *Piotrowski* are necessary in

order to distinguish between individual violations by local employees and those that can be fairly

attributed to conduct by the governmental entity itself.  *See Piotrowski*, 237 F.3d at 578-79.  The

United States Supreme Court has clearly emphasized the necessity of an official policy as a predicate

to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury
> inflicted solely by its employees or agents. Instead, it is when
> execution of a government's policy or custom, whether made by its
> lawmakers or by those whose edicts or acts may fairly be said to
> represent official policy, inflicts the injury that the government as an
> entity is responsible under § 1983.

*Monell*, 436 U.S. at 695.  Therefore, municipalities may not be held liable for acts of lower level

employees, but may be held liable for constitutional violations committed pursuant to an official

policy or custom.  *Piotrowski*, 237 F.3d at 578.

In addition, not only must the plaintiff establish that a policy or custom of the municipality

was the "moving force" behind the alleged violation of a constitutional right; he must also establish

that the municipality was "deliberately indifferent" to the known consequences of the policy. *Id.* at 580; *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264. The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999). *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (stating that these two requirements "must not be diluted").

## ANALYSIS:

In his motion, Defendant Allison asserts that Plaintiff has failed to exhaust his administrative remedies, and therefore his section 1983 claims should be procedurally barred under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

Plaintiff's Complaint was filed pursuant to 42 U.S.C. § 1983, and is thereby subject to the Prison Litigation Reform Act ("PLRA"), which provides in pertinent part, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted.*" 42 U.S.C. § 1997e(a) (emphasis added). The PLRA requires the plaintiff "to exhaust 'available' 'remedies,' whatever they may be. The failure to do so prevents him from pursuing a federal lawsuit at this time." *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). "In *Booth v. Churner*, the Supreme Court decided that Congress intended a prisoner to invoke

'such administrative remedies as are available' in the prison, without regard to whether the grievance procedure affords money damage relief, before he may file suit contesting prison conditions in federal court." *Wright*, 260 F.3d at 358 (citation omitted). The Supreme Court's finding was further summed up in a footnote: "Here, we hold only that Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative sources." *Booth v. Churner*, 532 U.S. 731, 741, n. 6. (2001). The district court is not required to determine if the petitioner made a good faith effort to pursue his administrative remedies. *Underwood v. Wilson*, 151 F.3d 292, 294 (5th Cir. 1998)(overruled on other grounds).

Defendant Allison notes that Plaintiff has never filed an inmate grievance regarding any of the claims of constitutional violations stated in his Complaint. Defendant Allison points to Plaintiff's inmate file which is devoid of any such grievance. (*See* Ex. "A" Attach. [34-1] Defs.' Mot. Summ. J.) Plaintiff's inmate file contains only inmate requests seeking assistance in obtaining additional hygiene items, assistance in accessing his inmate account, and a request to visit the library; there are no grievances or requests concerning any of Plaintiff's allegations raised in his Complaint. *Id.*

Upon a thorough review of the record and the pleadings before the Court, the Court finds that Plaintiff has failed to avail himself of the available administrative remedies provided by the PRCJ. Therefore, this Court finds that the instant 42 U.S.C. § 1983 claim should be dismissed for petitioner's failure to meet the PLRA's administrative remedies exhaustion requirement.

Although Plaintiff's failure to exhaust available administrative remedies is dispositive as to his section 1983 claims, the Court will, out of an abundance of caution, proceed to review Plaintiff's substantive claims against Defendant Allison in both his official and individual capacities.

As a pretrial detainee, Plaintiff's constitutional rights flow from the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment prohibition against cruel and unusual

punishment for convicted prisoners. Because they have not yet been convicted of the crime with which they are charged, pretrial detainees have a due process right not to be punished for that crime. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). The Supreme Court has stated the distinction between conditions that may be constitutionally imposed on convicted prisoners and conditions that may be imposed on pretrial detainees as follows:

> [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. **Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.**

*Ingraham v. Wright,* 430 U.S. 651, 671-72 (1977) (emphasis added).

The appropriate standard to apply in analyzing constitutional challenges by pretrial detainees depends on whether the alleged unconstitutional conduct is a "condition of confinement"[2] or an "episodic act or omission." *See Scott v. Moore,* 114 F.3d 51, 53 (5th Cir.1997) (en banc). The Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement that constitute "punishment." *Hamilton v. Lyons,* 74 F.3d 99, 103 (5th Cir.1996). "Punishment" may be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal-if it is arbitrary or purposeless." *Bell*, 441 U.S. at 539. "Reasonably related" means that the restriction is (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that

---

[2] The following were deemed to be conditions-of-confinement cases: *Murphy v. Walker,* 51 F.3d 714 (7th Cir.1995) (revocation of telephone, television, and cigarette privileges); *Collazo-Leon v. United States Bureau of Prisons,* 51 F.3d 315 (1st Cir.1995) (disciplinary segregation and denial of telephone and visitation privileges); *United States v. Millan,* 4 F.3d 1038 (2d Cir.1993) (length of pre-trial detention); *Hause v. Vaught,* 993 F.2d 1079 (4th Cir.1993) (restriction on mail privileges); *Brogsdale v. Barry,* 926 F.2d 1184 (D.C.Cir.1991) (overcrowding); *Lyons v. Powell,* 838 F.2d 28 (1st Cir.1988) (22-23-hour confinement and placement of mattress on floor); *Fredericks v. Huggins,* 711 F.2d 31 (4th Cir.1983) (policy of refusing detainees access to drugs for rehabilitation); *Lareau v. Manson,* 651 F.2d 96 (2d Cir.1981) (overcrowding).

purpose. *Id.* at 561. "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules." *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 646 (5th Cir.1996).

When a pre-trial detainee alleges unconstitutional conduct which involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights. *Gibbs v. Grimmette,* 254 F.3d 545, 548 (5th Cir. 2001). When the alleged constitutional violation is a particular act or omission by an individual that points to a derivative policy or custom of the municipality, the deliberate indifference standard is also appropriate. *Scott,* 114 F.3d at 53-54. To prove deliberate indifference, a pretrial detainee must show that the state official knew of and disregarded an excessive risk to the inmate's health or safety. *See Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir.1999).

The Court notes that Plaintiff's Complaint alleges both unconstitutional conditions of confinement and episodic acts or omissions. Therefore, the Court shall address the two categories of allegations individually.

## I. Conditions of Confinement:

Plaintiff alleges that Defendant Allison is officially liable because he failed to remedy the allegedly unconstitutional conditions at the PRCJ. The Court notes that Plaintiff's official capacity claims against Defendant Allison are, in reality, claims against the office in which he occupied at the time of the alleged incidents and, ultimately, Pearl River County. Therefore, to the extent Plaintiff brings this action against Defendant Allison in his official capacity, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the PRCJ had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the PRCJ's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Plaintiff's allegations include that there is black mold present in the restrooms and bunk areas, that water drips from the ceiling due to poor air flow, that the air conditioning vents are clogged with dust, that inmates get sick because it is too cold, and that there is no pest control for ants or spiders. However, other than the above mentioned allegations of unconstitutional conditions, Plaintiff presents no evidence that an official policy of the PRCJ was responsible for the alleged violation of his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violations. At best, Plaintiff's assertions amount to isolated instances of negligent conduct, which are insufficient to support the instant official capacity claim against Defendant Allison. Accordingly, the Court recommends that summary judgment be granted in favor of Defendant Allison on Plaintiff's official capacity claims as they relate to the conditions of the PRCJ.

Additionally, Plaintiff's Complaint seeks to impose liability against Defendant Allison in his individual capacity for the allegedly unconstitutional conditions at the PRCJ. However, because Defendant Allison is a law enforcement official, he may raise the defense of qualified immunity. *See Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986).

In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert v. Gilly*, 500 U.S. 226, 231 (1991). As a pretrial detainee, Plaintiff has a constitutional right not to be punished for the crimes with which he has been charged. Therefore, to the extent that Plaintiff seeks to establish § 1983 liability against Defendant Allison, Plaintiff must offer proof that the conditions at the PRCJ were imposed as a form of punishment. *Hamilton,* 74 F.3d at 103. A punitive purpose can be established by direct evidence of intent by detention facility officials to punish the pretrial

detainee. *Bell,* 441 U.S. at 538. Alternatively, a punitive purpose may be inferred if the challenged condition is not reasonably related to a legitimate governmental objective. *Id.* at 539.

The Court finds that Plaintiff's allegations concerning the cleanliness of the PRCJ do not rise to the level of constitutional violations. Plaintiff alleges that black mold is present in the restrooms and bunk areas, that water drips from the ceiling because of poor air flow, that there is dust in the air conditioning vents, and no pest control for ants or spiders. (*See* Pl.'s Compl. [1-1].) Despite these allegations, the Court notes that Plaintiff offers no evidence that Defendant Allison maintains the facility in an unsanitary fashion as a form of punishment. Also, Plaintiff fails to allege that Defendant Allison was even aware of these alleged conditions. Plaintiff's inmate file is devoid of any grievance concerning the above mentioned allegations. Furthermore, the evidence is clear that Defendant Allison tries to maintain the PRCJ in a serviceable condition. Although the facilities are not kept to Plaintiff's liking, "there is . . . a *de minimis* level of imposition with which the Constitution is not concerned." *Bell,* 441 U.S. at 539 (citing *Ingraham v. Wright,* 430 U.S. 651, 674 (1977)).

Also, Plaintiff claims in his Complaint that he did not receive any mail until he received his section 1983 form. (Pl.'s Compl. [1-1] 5.) However, Plaintiff does not allege that his legal mail has been tampered with or censored. Furthermore, Plaintiff does not claim that his ability to prepare or transmit necessary legal documents has been affected. The Court notes that Plaintiff successfully filed the present lawsuit and several pleadings therein. This Court finds Plaintiff's claim to be frivolous and unworthy of further discussion.

Lastly, Plaintiff claims that inmates are getting sick because it is too cold in the zones. *Id.* However, Plaintiff does not allege that he ever became ill or injured due to any of the conditions at the PRCJ. A section 1983 claim must be based upon the violation of a plaintiff's personal rights, and not the rights of someone else. *Bromfield v. Jones*, 849 F.2d 152, 154-55 (5th Cir. 1988); *see also*

*Coon v. Ledbetter*, 780 F.2d 1158, 1160-61 (5th Cir. 1986). Thus, to the extent Plaintiff has stated claims on behalf of other inmates, this Court finds that those claims should be dismissed.

After a careful analysis of Plaintiff's allegations concerning the conditions of his confinement at the PRCJ, the Court finds that Defendant Allison is entitled to qualified immunity as to Plaintiff's individual capacity claims. Plaintiff has failed to provide any direct evidence that Defendant Allison imposed any of the alleged conditions as a punitive measure. Furthermore, Plaintiff has failed to submit evidence tending to prove that the alleged conditions were not reasonably related to a legitimate governmental interest. Therefore, Plaintiff has failed to establish a violation of a clearly recognizable constitutional right.

## II. Episodic Acts and Omissions:

In addition to the allegations concerning the conditions of the PRCJ, Plaintiff also alleges that Defendant Allison is liable for various episodic acts and omissions which constituted deliberate indifference to his constitutional rights. As stated earlier, Plaintiff does not specify whether his claims against Defendant Allison are in his official capacity, his individual capacity, or both. Because *pro se* complaints are to be construed liberally, the Court will interpret Plaintiff's Complaint to allege claims against Defendant Allison in both his individual and official capacities. *See Gagne*, 805 F.2d at 559.

A. Failure to Protect:

Plaintiff alleges that Defendant Allison violated his constitutional rights by failing to protect him from violence at the hands of another inmate. Specifically, Plaintiff alleges that inmate Shaun Dillard pulled him into inmate Dillard's cell and sexually assaulted him. (Pl.'s Compl. [1-1] 4.) Plaintiff claims that inmate Dillard said he would kill Plaintiff and his kids if Plaintiff told anyone about the assault. *Id.* Also, Plaintiff asserts that on November 30, 2008, during yard call, inmate

Dillard attempted to get into a fight with Plaintiff but a PRCJ correctional officer was successful in stopping and preventing any altercation. *Id.* at 4-5.

As previously noted Plaintiff brings this action against Defendant Allison in both his individual and official capacities. In order to establish an official capacity claim, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the PRCJ had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the PRCJ's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

In a response to Defendant Allison's Answer to the Complaint, Plaintiff claims that Defendant Allison "fail[ed] to make policy or to take action to prevent predictable violations of Plaintiff's constitutional right..." (Pl.'s Resp. [26-1] Answer 3.) However, Plaintiff presents no facts or evidence that supports his broad allegation that inmate Dillard's actions were "predictable." Other than the above allegation of an incident of allegedly unconstitutional conduct, Plaintiff presents no evidence that an official policy of the PRCJ existed which violated his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. Plaintiff has presented no evidence that Defendant Allison was involved in the alleged assault against him or was even aware that it had occurred. Furthermore, Plaintiff has not presented any evidence, or even made an allegation, that any prison official was aware of a substantial risk to Plaintiff's safety and failed to respond properly. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). At best, Plaintiff's assertion amounts to an isolated incident of negligent conduct, which, by itself, is insufficient to support the instant official capacity claim against Defendant Allison.

To the extent that Plaintiff seeks to hold Defendant Allison liable in his individual capacity,

Defendant Allison asserts that he is entitled to the defense of qualified immunity. Also, Defendant Allison notes that Plaintiff does not allege that he was present during the alleged sexual assault, or was aware of a substantial risk to Plaintiff's safety. As the Supreme Court reiterated in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1952, 173 L. Ed. 2d 868, 887 (2009), where the doctrine of *respondeat superior* is inapplicable, a defendant cannot be held liable unless he himself acted on account of a constitutionally protected characteristic. Since "vicarious liability is inapplicable to... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 1948, 173 L. Ed. 2d 868 (2009). "A Complaint must state a claim that is plausible on its face." *Id.* at 1949-50, 1953, 173 L. Ed. 2d 868 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). As was the case in *Iqbal*, here the Plaintiff's Complaint does not contain any factual allegations sufficient to plausibly suggest Defendant Allison himself violated a constitutional right of the Plaintiff. Therefore, Plaintiff's pleadings do not meet the standard necessary to comply with Federal Rule of Civil Procedure 8 and subject Defendant Allison to liability in his individual capacity.

However, out of an abundance of caution, the Court will analyze Defendant Allison's claim of qualified immunity. In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert*, 500 U.S. at 231. Prison officials violate the Constitution only if they are both aware of a substantial risk to an inmate's safety and fail to respond properly. *Farmer*, 511 U.S. at 834. Therefore, Plaintiff must show that he was incarcerated under conditions that create a substantial risk of serious harm, and that Defendant Allison was deliberately indifferent to his safety. *See Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006). The standard is subjective. Thus,"[t]he official must both be aware of facts from which an inference could be drawn that a substantial risk of a serious harm exists and must

in fact also have drawn the inference." *Id.* at 593 (internal quotations omitted).

Based upon the facts presented, the Court is unable to conclude that Defendant Allison was in any way deliberately indifferent to Plaintiff's safety. Plaintiff does not allege, nor is there any evidence presented, that Defendant Allison was aware of the potential for violence against Plaintiff or had any reason to believe that Plaintiff was in any danger prior to the incident. There is no evidence presented, nor does Plaintiff allege, that inmate Dillard ever threatened Plaintiff or attempted to assault Plaintiff prior to the alleged sexual assault. Plaintiff's inmate file is devoid of any request for protection, any notice that Plaintiff was fearful of such an attack, or any notice to Defendant Allison that Plaintiff believed he was in danger of an attack. (*See* Ex. "A" Attach. [34-1] Def.'s Mot. Summ. J.) Absent some indication that Defendant Allison was subjectively aware of the potential for violence, Plaintiff's allegation is insufficient to give rise to liability for failure to protect.

After viewing the evidence in a light most favorable to Plaintiff, the Court concludes that Defendant Allison did not display deliberate indifference to Plaintiff's safety. The Court finds that a single altercation between Plaintiff and inmate Dillard is insufficient to find that Defendant Allison was subjectively aware of a serious risk to Plaintiff's safety. Furthermore, after the alleged sexual assault, when inmate Dillard and Plaintiff were about to engage in a confrontation, a PRCJ correctional officer responded and immediately defused the situation and prevented an altercation. At the very best, Plaintiff has alleged negligence. However, deliberate indifference is the subjective intent to cause harm, and it cannot be inferred from a jail official's failure to act reasonably. It is not the same as negligence. *Hare v. Corinth*, 74 F.3d 633, 648 (5th Cir. 1996). Mere negligent failure to protect a pre-trial detainee from attack does not justify liability under section 1983. *Davidson v. Cannon*, 474 U.S. 344, 347-48, 106 S. Ct. 668, 670, 88 L. Ed. 2d 677 (1986).

Assuming, *arguendo*, that Plaintiff has raised a genuine issue as to whether his constitutional

rights were violated, the Court finds that Plaintiff has presented no evidence of any unreasonable conduct on behalf of Defendant Allison. Even if the conduct violates a constitutional right, qualified immunity is applicable if the conduct was objectively reasonable. *Hare v. City of Corinth, Miss*, 135 F.3d 320, 327 (5th Cir. 1998). Plaintiff has presented no evidence that Defendant Allison was aware that inmate Dillard posed a significant threat to Plaintiff's safety prior to the alleged assault. The Court is unable to conclude that Defendant Allison in any way exhibited unreasonable conduct. Based upon the record, the Court finds that Defendant Allison did not behave in an objectively unreasonable manner. Therefore, Defendant Allison is entitled to qualified immunity as to Plaintiff's individual capacity claims. This issue is without merit.

Also, Plaintiff claims that he was verbally abused and harassed by other inmates about the assault. Plaintiff further claims that he was verbally abused by PRCJ staff. However, threats, harassment and verbal abuse are not actionable under § 1983. *See e.g.*, *Bender v Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993) (noting that verbal abuse is insufficient to serve as the legal basis of a civil rights action). Further, verbal sexual abuse does not violate an inmate's constitutional rights. *Doe v. City of Haltom*, 106 Fed. Appx. 906, 908 (5th Cir. 2004). Thus, Plaintiff has failed to state a violation of a clearly recognizable constitutional right.

B. Denial of Adequate Medical Treatment:

In a Response to an Order from this Court, Plaintiff alleges that he was denied medical attention following the sexual assault. (*See* Pl.'s Resp. [15-1].) Plaintiff's official capacity claim against Defendant Allison is, in reality, a claim against the office which he occupied at the time of the alleged incident and, ultimately, Pearl River County. Therefore, to the extent Plaintiff brings this action against Defendant Allison in his official capacity, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the

PRCJ had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the PRCJ's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Plaintiff claims that he was "denied medical attention upon request." (Pl.'s Resp. [15-1] 1.) However, Plaintiff's allegation concerning denial of medical care is in total contradiction to his medical file which is devoid of any sick call, medical request, or grievance submitted by Plaintiff. (*See* Ex. "B" Attach. [34-2] Mot. Summ. J.) The lone medical incident found in Plaintiff's medical file reveals that on December 13, 2008 Plaintiff was found to be having chest pains and shortness of breath. *Id.* Plaintiff was taken to the Highland Community Hospital where he was treated for Hypertension and released to return to the jail. *Id.* Thereafter, Plaintiff received follow-up treatment on December 14, 15, 17, and 18, 2008. *Id.* Plaintiff's inmate file does not contain a single sick call, medical request, or grievance submitted by Plaintiff concerning the alleged sexual assault. Other than the above mentioned allegation of inadequate medical care, Plaintiff presents no evidence that an official policy of the PRCJ existed which violated his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertion amounts to an isolated incident of negligent conduct, which, by itself, is insufficient to support the instant official capacity claim against Defendant Allison.

To the extent, Plaintiff's Complaint also seeks liability against Defendant Allison in his individual capacity, Defendant Allison has pled the defense of qualified immunity. In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert,* 500 U.S. at 231. When an alleged constitutional violation for failure to provide adequate medical care stems from an episodic

act or omission, the question is whether the state official acted with deliberate indifference to the individual's constitutional rights. *Gibbs*, 254 F.3d at 548. In order to prove deliberate indifference to serious medical needs, and thus a constitutional violation, a prisoner must show that the state official knew of and disregarded an excessive risk to inmate health or safety. *See Stewart v. Murphy*, 174 F.3d 530, 534-35 (5th Cir. 1999).

Deliberate indifference is more than mere negligence in providing or failing to provide medical treatment. *See Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982). The law is clear that unsuccessful medical treatment, mere negligence, neglect, nor medical malpractice gives rise to a section 1983 cause of action. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Furthermore, disagreement with medical treatment alone is insufficient to support a claim under section 1983. Rather, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)(quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Defendant Allison contends, and the Court agrees, that Plaintiff has failed to meet his burden of establishing that Defendant Allison was deliberately indifferent to his serious medical needs. Plaintiff's only claim is that he was denied medical attention. However, after a thorough review of the record, the Court is unable to conclude that Plaintiff has created a genuine issue as to whether Defendant Allison was deliberately indifferent to his serious medical needs. There is no evidence indicating that Plaintiff was ever denied any medical request, and certainly no evidence that Defendant Allison was aware that Plaintiff was in need of treatment. Therefore, Plaintiff has not alleged sufficient facts to permit an inference that Defendant Allison was aware of a serious risk to Plaintiff's

health. Furthermore, the evidence of record indicates that the PRCJ medical staff responded to Plaintiff's shortness of breath and chest pains by taking him to the local hospital and providing follow-up treatment. (*See* Ex. "B" Attach. [34-2] Mot. Summ. J.) The Court notes that Plaintiff's medical file does not contain any grievance concerning needed medical treatment following a sexual assault. Mere negligence nor neglect gives rise to a section 1983 cause of action. *See Varnado*, 920 F.2d at 321. This issue does not rise to an actionable claim.

The Court also finds that to the extent Plaintiffs' Complaint could be construed to allege claims under state law, they are barred by provisions contained in the Mississippi Tort Claims Act, MISS. CODE ANN. § 11-46-1, *et seq.* Specifically, the Act provides that a government subdivision shall not be liable for a claim "of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary, or other such institution regardless of whether such claimant is or is not an inmate . . . when the claim is filed." MISS. CODE ANN. § 11-46-9(1)(m). The Court finds that because Plaintiff was an inmate at the time these events allegedly occurred, any claims arising under Mississippi law as a result of these alleged events are barred by the above provision.

## RECOMMENDATION:

After considering the evidence of record, the Court concludes that Plaintiff has failed to create a genuine issue as to whether Defendant Allison violated Plaintiff's constitutional rights during his incarceration at the PRCJ. The Court also concludes that Plaintiff failed to exhaust the available administrative remedies. Accordingly, the Court recommends that Defendant Allison is entitled to summary judgment, and Plaintiff's official and individual capacity claims against Defendant Allison should be dismissed with prejudice.

In accordance with the Rules of this Court, any party, within fourteen (14) days after being served a copy of this recommendation, may serve and file written objections to the recommendations,

with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United States Auto Ass'n*, 79 F.3d 1415, 1425 (5th Cir. 1996).

**SO ORDERED** this the ___2nd___ day of September, 2010.

_____s/ John M. Roper, Sr._____
CHIEF UNITED STATES MAGISTRATE JUDGE